UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **DEBORAH M. DAVIS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | Case No.  08-2091 |
| **COMMISSIONER OF SOCIAL SECURITY,** ) | |
| **sued as Michael J. Astrue,** ) | |
| ) | |
| **Defendant.** ) | |

# REPORT AND RECOMMENDATION

In September 2007, Administrative Law Judge (hereinafter "ALJ") David Thompson denied Plaintiff Deborah Davis's applications for disability insurance benefits and supplemental security income benefits.  The ALJ based his decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she is capable of performing her past work, as well as a number of other jobs that exist in the national economy.

In April 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying benefits. In September 2008, Plaintiff filed a Motion for Summary Judgment or Remand (#10).  In October 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#12).  In December 2008, Plaintiff filed a Short Reply in Support of Her Motion for Summary Judgment or Remand (#15).  After reviewing the administrative record and the parties' memoranda, this Court now recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's  Motion for Summary Judgment or Remand **(#10)** be **GRANTED**.

## I.  Background

### A.  Procedural Background

Plaintiff applied for benefits in December 2003, alleging disability beginning February 1996.  (R. 35.)  The Social Security Administration denied the applications initially and upon reconsideration.  Plaintiff appealed and ALJ Thompson held a hearing in August 2007, at which Plaintiff and vocational expert Bob Hammond testified.  Plaintiff was represented by counsel at the hearing.  In September 2007, ALJ Thompson denied Plaintiff's applications for benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she is capable of performing her past relevant work as well as a number of jobs that exist in the national economy.  The Appeals Council subsequently denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner.  Plaintiff then appealed the decision to this Court.

### B.  Plaintiff's Background

Plaintiff was 53 at the time at the time of the ALJ's decision.  She is 67 inches tall and weighed between 260 and 280 pounds during the period under consideration.  She has earned a GED.  Plaintiff has worked as a cashier, day care worker, deli worker, and counter clerk.  She has worked since 1996 but her earnings never rose to the amount required to constitute substantial gainful activity.  (R. 16.)

The record contains medical evidence related to several conditions.  In April 2004, Dr. Kaushik Patel examined Plaintiff.  Her chief complaint at the time was arthritis of the back, right knee, and ankle since 1995.  (R. 262.)  Plaintiff provided her history as follows.  She started having back pain in 1995.  She was diagnosed with rheumatoid arthritis and referred to a rheumatologist, but she did not go because she could not afford it and also because she did not need treatment for the "aches" she experienced when the weather changed.  (R. 262.)  Plaintiff also had a screening test and was found to have hepatitis C (apparently in 2000 (*see* R. 217)).  She has not had any follow-up or evaluation for this since 2000.  Regarding her back. knee, and ankle pain, Plaintiff stated that she experiences constant pain that she rates at a 10 on a

10-point scale.  She is able to walk around a store for about an hour, stand for about an hour to an hour and a half, and sit for 45 to 60 minutes.  Dr. Patel noted that Plaintiff's gait is normal and she did not need an assisting device to ambulate.  She had normal range of motion of her neck and upper extremities.  Her lumbar flexion was 90 degrees with lateral lumbar flexion being 25 degrees bilaterally.  Hip flexion was 90 degrees on the right and 100 degrees on the left.  Knee flexion was 140 degrees on the right and 150 degrees on the left.  Straight leg raise was 90 degrees bilaterally.  (R. 263.)  Dr. Patel noted that Plaintiff babysits for her grandchildren, taking care of them for five hours a day for three days a week.

Dr. Ruth Craddock's clinic notes for the rheumatology consultation in September 2004 state that Plaintiff told her she "saw a primary care physician [around 1995] who ran labs and told her she had rheumatoid arthritis and osteoarthritis."  (R. 272.)  Plaintiff was referred to a rheumatologist but she never went because the pain got better.  Dr. Craddock wrote in her assessment, in pertinent part, as follows:

> She complains of diffuse musculoskeletal pain with a history of "arthritis."  Her exam is not revealing for much of anything other than degenerative change, mild in the hands.  The positive rheumatoid factor on previous testing is likely secondary to her history of hepatitis C.

(R. 273.)  Thus, Dr. Craddock has not diagnosed Plaintiff with rheumatoid arthritis.  Dr. Craddock also noted that Plaintiff was morbidly obese, in no acute distress, although occasionally tearful during the appointment.  She had full range of motion of the cervical spine, shoulders, elbows, wrists, and hands.  She had full range of motion of the hips, knees, and ankles.  Her back showed very stiff flexion to about 60 degrees and straight leg raise was negative for radicular pain, but did reproduce low back pain.  Her gait was normal and she could toe and heel walk without problem.  She had some tenderness at the posterior neck and trapezia and a little tenderness over the right SI region.  (R. 273.)

In December 2004, Dr. Ronnie Luyun examined Plaintiff to evaluate her thrombocytopenia (low platelet count in the blood).  (R. 327.)  Plaintiff denied any problems related to the thrombocytopenia other than occasionally bruises.  Plaintiff stated that she was in

3

her usual state of health with problems associated with chronic back pain and the doctor noted that she was in no distress. He also observed that her range of motion was normal and she had a normal gait. His impression was that her thrombocytopenia was likely related to active hepatitis C and active rheumatoid arthritis. (R. 328.) In June 2005, Plaintiff consulted Dr. Thomas Huber in connection with abnormal liver tests and hepatitis C. (R. 309.) He noted that she appears to have chronic hepatitis C with thrombocytopenia that is most likely secondary to cirrhosis. In July 2005, Plaintiff was referred to Dr. Andrew Batey because of hepatitis C. (R. 306.) In September 2005, Plaintiff began a 24-week interferon treatment for hepatitis C. (R. 302.) In October 2005, Dr. Batey noted that Plaintiff had completed almost six weeks of the treatment. (R. 301.) During the past two to three weeks, she had experienced significant side effects, including pain in the right upper quadrant of the abdomen, joint aches, chills, and ill stools. The Court found no further information in the record about whether she completed this treatment.

Regarding her back, Plaintiff reports chronic lower back pain since 1995. In early 2006, Plaintiff reported more severe pain going down her left leg to her knee. In March 2006, she went to the emergency room because of the pain. (R. 298.) Dr. Sarah Marner treated her with injections first, and then referred her to Dr. Charles Wright, who performed a microdiscectomy in June 2006. (R. 286.) At a post-op appointment in July 2006, Dr. Wright noted that Plaintiff reported that her leg symptoms were "for all practical purposes resolved." (R. 325.) He stated that she is back to having her chronic low back pain, "as was present for many years before this, but [she] does not offer any significant complaints regarding the specific leg pain present before surgery." (R. 325.)

Plaintiff testified that she was depressed, but the record contains no evidence that she was diagnosed or treated for depression.

### C. The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 416(i)(1). To determine disability, the Commissioner uses a five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy. Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process. At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the alleged onset of disability. At the second step, the ALJ stated that the record showed Plaintiff had the severe impairment of arthritis. At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in the Regulations. (R. 17.) The ALJ determined that Plaintiff had the RFC to perform light work with occasional climbing, bending, stooping, kneeling, crouching, and crawling. Based on this RFC, at step four, the ALJ determined that Plaintiff was able to perform her past work as a cashier, day care worker, deli worker, and counter clerk. (R. 20.) At step five, the ALJ determined that Plaintiff had transferable skills such as the ability to handle stress and deal with emergencies,

such that she could work as a dispatcher at the sedentary exertional level. The ALJ also concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (R. 19.) As a result of these findings, the ALJ found that Plaintiff was not disabled; therefore she was not eligible for social security benefits. (R. 20.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992). When credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review them. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

## III. Analysis

Plaintiff argues that the Court should remand this case for the following reasons: (1) the ALJ failed to properly weigh and consider all the evidence, failed to consider Plaintiff's obesity pursuant to SSR 02-1p, and failed to consider the effect of the combination of Plaintiff's impairments; (2) the ALJ's credibility assessment was flawed; and (3) the ALJ's hypothetical

questions were incomplete and his step four and step five findings were erroneous and unsupported.

The Court need not consider all these arguments because the ALJ's decision includes several clear errors that require remand.

### A. The ALJ's Consideration of the Evidence

Plaintiff first contends that the ALJ failed to consider all the evidence.

When addressing whether Plaintiff had severe impairments, the ALJ stated that Plaintiff had arthritis, a severe impairment that limited Plaintiff's ability to perform basic work activities. (R. 16.)  He then stated as follows:

> The claimant also alleges that she is disabled, in part, due to depression, hepatitis C, and rheumatoid arthritis.  However, there is no evidence in the medical records that the claimant was ever diagnosed with or treated for depression, hepatitis C, or rheumatoid arthritis.  Therefore, as these impairments are not medically determinable impairments, the undersigned considers them to be non-severe.  As a result, depression, hepatitis C, or rheumatoid arthritis cannot be considered the cause of any functional restrictions (SSR 96-4p).

(R. 17.)

The ALJ is correct that there is no evidence that Plaintiff was diagnosed with or treated for depression.  However, the ALJ erred by stating that the record contained no evidence that Plaintiff was ever diagnosed with or treated for hepatitis.  The evidence is undisputed that Plaintiff had been diagnosed with hepatitis C.  In addition, Plaintiff began a 24-week course of interferon treatment for hepatitis C in July 2005 under Dr. Batey's supervision.  (R. 302.) Although it is unclear from the record whether Plaintiff completed the treatment, it is beyond challenge that she underwent treatment.

7

Whether Plaintiff was ever diagnosed with rheumatoid arthritis is less clear. Like Dr. Patel, several other doctors report a "history" of rheumatoid arthritis; they also refer to Dr. Ruth Craddock as Plaintiff's "rheumatologist." Based on a careful review of the medical records, it appears that Plaintiff believed she had been diagnosed as having rheumatoid arthritis and told her doctors this; this formed the basis for the doctors' repeated reference to a history of rheumatoid arthritis. (*See* R. 262.) However, according to Dr. Craddock, testing prior to the doctor's September 2004 consultation showed that Plaintiff had a "positive rheumatoid factor." (R. 273.) Dr. Craddock stated that the positive rheumatoid factor on previous testing was likely secondary to her history of hepatitis C. Thus, Dr. Craddock's evaluation and clinic notes do not indicate a "diagnosis" of rheumatoid arthritis and the Court has found no other such diagnosis in the record.

Nevertheless, as noted above, several doctors apparently believed that Plaintiff had been diagnosed with rheumatoid arthritis in the past and at least one doctor stated that "she has been taking methadone for five years now for drug maintenance and chronic pain from rheumatoid arthritis." (R. 306.) Other than this reference, the ALJ is correct that Plaintiff has not received been treated for rheumatoid arthritis. Plaintiff herself told Dr. Patel that she had been referred to a rheumatologist but she did not go because she could not afford it and also because she did not need treatment for the "aches" she experienced when the weather changed. (R. 262.) She told Dr. Craddock that she had been referred but she never went because the pain got better.

In addition to the significant factual error regarding Plaintiff's hepatitis C diagnosis and treatment, the Court notes that the ALJ made a legal error when she stated that, because the conditions at issue were nonsevere, they cannot be considered the cause of any functional restrictions. First, her reference to SSR 96-4p is not helpful. That ruling clarifies the SSA's policy on evaluating symptoms; it does not even mention functional restrictions or nonsevere impairments. Second, Section 404.1545 of the Code of Federal Regulations provides as follows:

**8**

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment . . ., we will consider the limiting effects of all your impairment(s), *even those that are not severe*, in determining your residual functional capacity.

20 C.F.R. § 404.1545(e) (emphasis added); *Villano v. Astrue,* 556 F.3d 558, 563 (7th Cir. 2009) ("In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe.") (citing SSR 96-8p). Thus, the ALJ erred by ignoring the effects, if any, of Plaintiff's hepatitis. An ALJ is under no obligation to articulate his reasons for rejecting every piece of evidence before him but the ALJ cannot ignore an entire line of evidence or select and discuss only the evidence that favors his ultimate conclusion. *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Herron*, 19 F.3d at 333. It may well be that, based on the evidence in this case, Plaintiff's hepatitis did not cause any functional limitations. However, the ALJ must consider this evidence and explain his reasons for accepting or rejecting it. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that meaningful review requires the ALJ to articulate his reasons for accepting or rejecting entire lines of evidence). Therefore, the Court recommends remanding this case for further consideration.

### B. The ALJ's Step Four and Step Five Analysis

In addition, Plaintiff contends that the ALJ erred at steps four and five. For purposes of the following discussion, the Court will assume, without deciding, that the ALJ's RFC determination is correct.

#### 1. Step Four

The ALJ determined that Plaintiff had the RFC to perform light work with some postural limitations. (R. 20.) At the hearing, the ALJ first asked the vocational expert (hereinafter "VE") about a hypothetical individual who could perform light work; however, the hypothetical question did not include any postural limitations. The VE testified that such an individual could perform Plaintiff's past work of cashier, deli worker, day care worker, and counter clerk. The

ALJ then asked the VE about an individual who could perform sedentary work with occasional postural limitations. The VE testified that such an RFC would eliminate all past relevant work.

When an ALJ questions the VE regarding a plaintiff's ability to perform her past relevant work, a hypothetical question is sufficient if it includes the substantially-supported findings of the RFC. *Young v. Barnhart*, 362 F.3d 995, 1002-04 (7th Cir. 2004). Here, the ALJ concluded that Plaintiff had postural limitations, but he did not include those limitations in his question to VE at step four. When the ALJ added postural limitations to the hypothetical question, he also changed the exertional level to sedentary. As a result, the Court cannot tell if the VE's response that all past relevant work was eliminated was based on the sedentary exertional level or the postural limitations. Accordingly, the VE's response does not constitute substantial evidence supporting the ALJ's step four conclusion because it was based on an incomplete hypothetical question.

Defendant contends that this constitutes harmless error because, according to the DOT, several of Plaintiff's past jobs did not require her to perform postural activities. The Court is limited to the reasons provided by the ALJ; it cannot consider Defendant's *post hoc* rationalization for the ALJ's determination regarding Plaintiff's ability to perform her past relevant work. *See Golembiewski v. Barnhart,* 322 F.3d 912, 916 (7th Cir. 2003) ("general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ").

### 2. Step Five

In determining whether a claimant can perform jobs that exist in significant numbers at step five of the analysis, the ALJ must decide whether the claimant acquired any skills from her past work experience, and if so, whether they would transfer to new jobs. *See* S.S.R. 82-41; *Villano*, 556 F.3d at 563. Transferable skills are those skills that are actually acquired through a claimant's past work. SSR 83-41(2b) ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other

skilled or semiskilled jobs."); *Key v. Sullivan*, 925 F.2d 1056, 1062 (7th Cir. 1991) (determining that the ALJ failed to "identify work skills *actually acquired*" by the plaintiff (emphasis in original)).

At the hearing, the VE first testified that Plaintiff would have transferable skills from her past day care work, including "an ability to deal with stressful situations, the ability to respond quickly to problems and emergencies, and the knowledge of how to deal with various specific types of emergency basis." (R. 433-34.) The VE stated that he reached that conclusion based on his knowledge that Plaintiff had worked as a day care worker and as an institutional day care worker at Webster Cantrell Hall. (R. 436-37.) However, Plaintiff subsequently testified that, when she worked at those two jobs, she did not have to deal with any emergency situations. The only thing she mentioned was that one time she and other workers broke up a fight between two girls. (R. 437-38, 439.) As a result, Plaintiff had not acquired those transferable skills referred to by the VE. Nevertheless, the ALJ stated in his decision that she had transferable skills "such as the ability to handle stress and deal with emergencies." (R. 20.) In light of Plaintiff's testimony, and in the absence of an explanation by the ALJ, the Court concludes that this statement constitutes a factual error.

Furthermore, at the hearing, the ALJ asked the VE what jobs the hypothetical person could do with the transferable skills he had mentioned. The VE responded that the individual could perform work as a dispatcher. (R. 434.) Thus, based on the VE's testimony, the dispatch job was only available because of the existence of those transferable skills. However, once Plaintiff testified that she had not acquired the transferable skills at issue, the VE's reasoning no longer applied to Plaintiff. Thus, the ALJ erred by concluding at step five that Plaintiff could work as a dispatcher.

Based on these errors, the Court recommends remand for reconsideration. On remand, the Court suggests that the ALJ address what effect Plaintiff's obesity had on her arthritis under SSR 02-1p. Although a failure to consider the effect of obesity is subject to harmless-error

analysis, the Commissioner has not persuaded us that the error is harmless, given the other flaws with the RFC analysis and the analysis of Plaintiff's ability to perform other jobs. *See Villano*, 556 F.3d at 562 (citing *Prochaska v. Barnhart,* 454 F.3d 731, 736-37 (7th Cir. 2006)). In addition, ALJs who hear testimony from VEs about the requirements of a particular job have an affirmative duty to inquire about potential conflicts between the VE's findings and information provided in the DOT. *Prochaska,* 454 F.3d at 735; SSR 00-4p. If a VE's statements appear to conflict with the DOT, the ALJ must investigate the inconsistency. *Id.* Here, the ALJ did not comply with SSR 00-4p. On remand, the ALJ is directed to comply with SSR 00-4p.

### IV.  Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#10)** be **GRANTED**. The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten working days after service of a copy of this recommendation. *See* 28 U.S.C. 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 24th day of April, 2009.

                                                s/ DAVID G. BERNTHAL  
                                                U.S. MAGISTRATE JUDGE